# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARC KEATING,

    Plaintiff,

v.

PITTSTON CITY HOUSING AUTHORITY,

    Defendant.

3:17-CV-465
(JUDGE MARIANI)

FILED
SCRANTON
MAR 2 1 2018

PER /s/
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

In this employment discrimination action, Plaintiff, Marc Keating, asserts claims against his former employer and now Defendant, Pittston City Housing Authority, arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* Presently before the Court is Defendant's partial Motion to Dismiss. (Doc. 17). For the reasons that follow, the Court will grant Defendant's Motion.

### II. FACTUAL ALLEGATIONS

Plaintiff's Amended Complaint alleges the following facts which, for the purposes of resolving Defendant's Motion, the Court takes as true:

Defendant is a business entity that does business in Pennsylvania. (Doc. 15 at ¶ 9). Defendant hired Plaintiff in a temporary, full-time capacity from May of 2014 to September

of 2014. (*Id.* at ¶ 23). On January 17, 2015, Defendant re-hired Plaintiff as a full-time employee through the Social Security Disability Trial Work and Self-Sufficiency Program. (*Id.* at ¶¶ 25-26). At the time, Plaintiff suffered from several disabilities, such as impingement of his peroneal nerve, drop foot, kidney failure, and anxiety. (*Id.* at ¶ 19). Some or all of these disabilities were discussed with his supervisors at the time of his hire. (*Id.* at ¶¶ 27-28). Plaintiff's disabilities required him to periodically take off time from work for treatments and evaluations. (*Id.* at ¶ 29).

At some time during his employment, one of Plaintiff's supervisors began to harass Plaintiff about his disabilities and his need to take time off of work. (*Id.* at ¶¶ 31). Plaintiff reported the harassing behavior to another one of his supervisors, but no action was taken. (*Id.* at ¶¶ 32-33). In response to his complaints, Plaintiff began to be assigned tasks that were impossible for Plaintiff to complete. (*Id.* at ¶¶ 34-35). Plaintiff then escalated his complaints of harassment and discrimination to a lead supervisor and eventually to Director William Lizack. (*Id.* at ¶ 36, 41). Director Lizack took no action on Plaintiff's complaints. (*Id.* at ¶ 42).

In late August or early September, Plaintiff informed a lead supervisor that he needed to take three days off from work for a medical evaluation related to one of his disabilities. (*Id.* at ¶¶ 37-39). Plaintiff also provided Director Lizack with a doctor's note which excused the three day absence. (*Id.* ¶ at 43). On September 8, 2015, Plaintiff was

questioned by Director Lizack about his need to take time off from work. (*Id.* at ¶ 44). Plaintiff offered medical documentation, but Director Lizack refused to take it. (*Id.* at ¶ 45).

On September 23, 2015, Defendant terminated Plaintiff's employment. (*Id.* at ¶ 48). Although Plaintiff's job performance was good and he had never been subject to a write-up for any performance issues, Defendant identified job performance as the reason for the termination. (*Id.* at ¶ 49). Defendant later asserted that Plaintiff was laid off due to lack of work. (*Id.* at ¶¶ 49-50).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

3

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

## IV. ANALYSIS

Through the present Motion, Defendant seeks to (1) dismiss Plaintiff's two claims brought under the FMLA and (2) dismiss Plaintiff's demand for a jury trial and claim for compensatory damages with respect to his ADA retaliation claims. The Court will address these issues in turn.

4

## A. FMLA Claims

Count V of Plaintiff's Amended Complaint alleges that Defendant interfered with Plaintiff's rights under the FMLA by (1) failing to provide him with various mandated notices, (2) preventing him from taking FMLA protected leave, and (3) terminating his employment when he did take FMLA protected leave. (Doc. 15 at ¶¶ 81-94). Count VI of Plaintiff's Amended Complaint alleges that Defendant unlawfully retaliated against Plaintiff by terminating his employment when he requested and then took FMLA protected leave. (*Id.* at ¶¶ 96-100). Defendant argues that these claims fail because Defendant does not employ enough employees to be subject to the provisions of the FMLA. (Doc. 18 at 5-9).

Under the FMLA, "an eligible employee [is] entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave "may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1). In addition to creating rights, the FMLA creates a cause of action for an employee when an employer interferes with the employee's exercise of his or her FMLA rights or "retaliates against an employee for exercising [his or] her FMLA rights." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 318 (3d Cir. 2014); 29 U.S.C. § 2615(a). However, "[t]he FMLA does not provide a private right of action for any employee, but rather only for eligible employees." *Sinacole v. iGate Capital*, 287 F. App'x 993, 996 (3d Cir. 2008).

The Act defines "eligible employee" as "an employee who has been employed--(i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). The Act further specifies that "[t]he term 'eligible employee' does not include . . . any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(B)(ii). Consequently, in order to state a claim under the FMLA, an employee must plead, among other things, that "'he or she was an eligible employee under the FMLA'" and that "'the defendant was an employer subject to the FMLA's requirements.'" *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. Of Allegheny Cty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)); *see also Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 411 (E.D. Pa. 1998) ("[I]n order to state a claim under the FMLA, a complaint must at least contain allegations which establish that, within the meaning of the FMLA, the defendant employer is an 'employer' and the plaintiff employee is an 'eligible employee.'").

Plaintiff has not pleaded that Defendant itself has fifty or more employees. Instead, Plaintiff has pleaded that "Defendant and the City of Pittston were joint employers under the FMLA" and "Defendant is engaged in an industry affecting commerce and employed fifty (50) or more employees in conjunction with the City of Pittston." (Doc. 15 at ¶¶ 84, 86).

The Department of Labor's FMLA regulations provide the following with respect to joint employment:

> (a) Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
>> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
>>
>> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
>>
>> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106. Further, the Third Circuit has provided the following guidance to aid district courts making a joint employment determination:

> When faced with a question requiring examination of a potential joint employment relationship . . . courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

7

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012) [hereinafter *Enterprise*].[1] The *Enterprise* Court, however, was quick to note "that this list is not exhaustive, and cannot be 'blindly applied' as the sole considerations necessary to determine joint employment." *Id.* (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469-70 (9th Cir. 1983)).

Here, Plaintiff makes the following allegations concerning the joint employment relationship between Defendant and the City of Pittston:

> 12. Pursuant to the Pittston City Code, Pittston City Council appoints Defendant's Board of Directors for five (5) year terms. Pittston City Code § 18-5.
>
> 13. In fact, Pittston City Council did appoint Defendant's Board of Directors.
>
> 14. Upon information and belief, Pittston City Council had control on who Defendant hired.
>
> 15. Upon information and belief, Pittston City Council had control on which employees Defendant fired.
>
> 16. Upon information and belief, Pittston's Mayor had the authority to direct Defendant to hire an individual.
>
> 17. Upon information and belief, Pittston's Mayor had the authority to direct Defendant to fire an individual.

---

[1] *Enterprise* concerned whether there was a joint employment relationship under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, not the FMLA. Nevertheless, the regulations concerning joint employment under the FLSA are almost identical to those concerning joint employment under the FMLA. Compare 29 C.F.R. § 791.2(b) with 29 C.F.R. § 825.106(a); *see also Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) ("The joint-employer regulation in the FLSA mirrors that in the FMLA."). Accordingly, the Court finds the *Enterprise* joint employment test applicable to the FMLA.

8

> 18. Upon information and belief, Pittston's Mayor had the authority to control the conditions of employment of Defendant's employees.
>
> . . .
>
> 84. Defendant and the City of Pittston were joint employers under the FMLA.
>
> 85. Specifically, Defendant and the City of Pittston were joint employers under the FMLA because the City of Pittston had control over who to hire, which employees to fire, and the conditions of employment for Defendant's employees.

(Doc. 15). Defendant argues that these allegations of joint employment are inadequate in light of the fact that (1) Defendant cannot be deemed an instrumentality of the City of Pittston under Pennsylvania law, and (2) a District Court in the Middle District of Pennsylvania has previously found that Defendant and the City of Pittston are not joint employers.

Defendant's first argument relies on the Pennsylvania Housing Authorities Law, under which Defendant was created. That statute provides, in relevant part, that:

> There are hereby created separate and distinct bodies, corporate and politic, one for each city (as herein defined), and one for each of the counties of the Commonwealth. Each such Authority may be known as the housing authority of the city or the county, as the case may be, *but shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function*. Each such Authority shall transact no business or otherwise become operative until and unless a finding is made, as hereinafter provided in this section.

35 P.S. 1544(a) (emphasis added). Defendant argues that this provision makes clear that Defendant and the City of Pittston cannot, as a matter of law, be joint employers.

9

Defendant's second argument relies on *Alba v. Housing Authority of City of Pittston*, 400 F. Supp. 2d 685 (M.D. Pa. 2005). In that case, Alba argued that the Housing Authority of the City of Pittston and the City of Pittston were a single employer or joint employers for purposes of the Age Discrimination in Employment Act ("ADEA"). *Id.* at 688-89. After applying the joint employment test articulated in *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117 (3d Cir. 1982),[2] the *Alba* Court determined that the Housing Authority of the City of Pittston and the City of Pittston were not a single employer nor joint employers:[3]

> There is no evidence that the City controls any of [the Housing Authority of the City of Pittston's ("PHA's")] employees, other than that it appoints PHA Board members. While PHA contracts with the City for its off-duty Police Officers to patrol its projects, showing a degree of functional integration of operations, there is not control of the Police by PHA, as we have found above, and there is no common management of either the Police by PHA or of PHA employees by the City. . . . Further, we do not find, simply because the Mayor and Council appoint the PHA Board members for five-year non-paying terms and because the Mayor terminated a Board member in the past since the member moved out of the City, that this is sufficient to show that the City and PHA are a single employer.

---

[2] *Browning-Ferris* articulated the joint employment test for purposes of the National Labor Relations Act. *Browning-Ferris*, 691 F.2d at 1124. According to that test, "where two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' within the meaning of the NLRA." *Id.*

[3] As explained in *Browning-Ferris*, "[t]he 'joint employer' and 'single employer' concepts are distinct." *Browning-Ferris*, 691 F.2d at 1122. "A 'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *Id.* "In contrast, the 'joint employer' concept does not depend upon the existence of a single integrated enterprise." *Id.* "Rather, a finding that companies are 'joint employers' assumes in the first instance that companies are 'what they appear to be'—independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship.'" *Id.* (alteration in original) (quoting *NLRB v. Checker Cab Co.*, 367 F.2d 692, 698 (6th Cir. 1966)).

> Moreover, there is no evidence that the PHA and the City share office space, that the City controlled any of PHA's records, including employment records, and that the City and PHA had joint employment. There is no evidence that the two legal entities combine payroll or any other financial records.
>
> There is evidence, however, that Plaintiff received benefits from PHA such as a pension plan. PHA provides its own benefits to its employees. PHA's Executive Director does not report to the City. PHA's Board does not report to the City. PHA's Board hires its own employees. Thus, we find no genuine issue of material fact that PHA and the City are separate legal entities and employers.

*Alba*, 400 F. Supp. 2d at 700-01 (citations omitted).

While the Court is unconvinced that 35 P.S. 1544(a) and *Alba* compel the conclusion that Defendant and the City of Pittston can never, as a matter of law, be joint employers, the Court concludes that the above authority creates a presumption that Defendant and the City of Pittston are not joint employers. Given that Defendant, as a matter of Pennsylvanian law, "shall in no way be deemed to be an instrumentality" of the City of Pittston, see 35 P.S. 1544(a), and that a Court of this district has previously found that Defendant and the City of Pittston were not joint employers, see *Alba*, 400 F. Supp. 2d at 700-01, Plaintiff's general allegations of joint employment are inadequate to overcome the presumption against joint employment.

Nevertheless, even in the absence of 35 P.S. 1544(a) and *Alba*, Plaintiff's allegations still fall short. As implicitly stated in both the *Enterprise* test and the FMLA regulations, a joint employment relationship is specific to an individual employee. See *Enterprise*, 683 F.3d at 469 (emphasis added) ("When faced with a question requiring examination of a

potential joint employment relationship . . . courts should consider . . . the alleged employer's authority to hire and fire *the relevant employees* . . . ."); 29 C.F.R. § 825.106(a) (emphasis added) ("Where two or more businesses exercise some control over the work or working conditions of *the employee*, the businesses may be joint employers under FMLA."). Here, Plaintiff makes conclusory allegations such as "[u]pon information and belief, Pittston City Council had control on who Defendant hired," (Doc. 15 at ¶ 14), and "[u]pon information and belief, Pittston's Mayor had the authority to direct Defendant to fire an individual," (*Id.* at ¶ 16), but fails to allege how Pittston City Counsel or Pittston's Mayor were involved in, or had control over, *Plaintiff's* hiring or *Plaintiff's* termination. That is, Plaintiff alleges generally that Defendant and the City of Pittston are joint employers but does not allege how Defendant and the City of Pittston are Plaintiff's joint employers. Indeed, there is not a single allegation in Plaintiff's Amended Complaint that connects the City of Pittston to any aspect of Plaintiff's employment. This is insufficient to plead that Defendant and the City of Pittston are Plaintiff's joint employers for purposes of the FMLA.

Accordingly, because Plaintiff has failed to adequately allege that the City of Pittston is one of his joint employers, and has not alleged that Defendant, by itself, has fifty or more employees and is subject to the FMLA's requirements,[4] the Court will dismiss Plaintiff's claims for violations of the FMLA.

---

[4] Defendant has attached a document to its Motion that purports to prove that Defendant has less than fifty employees. (Doc. 19-1). Plaintiff argues that this Court cannot consider this document without converting Defendant's Motion to Dismiss into a Motion for Summary Judgment. Nevertheless, the Court

## B. ADA Retaliation Claim

Next, Defendant argues that, with respect to Plaintiff's ADA retaliation claim, this Court should dismiss Plaintiff's claim for compensatory damages and demand for a jury trial. (Doc. 18 at 9-11). Defendant's argument relies on an interpretation of the ADA endorsed in *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311 (W.D. Pa. 2004). In *Sabbrese*, the Court, relying heavily on *Kramer v. Banc of America Securities LLC*, 355 F.3d 961 (7th Cir. 2004), reasoned that 42 U.S.C. § 1981a(a)(2) "permitted recovery of compensatory and punitive damages only for the claims listed in that statute, such as section 12112 of the ADA, and since the section establishing retaliation claims under the ADA (42 U.S.C. § 12203) was not listed, compensatory and punitive damages were unavailable." *Sabbrese*, 320 F. Supp. 2d at 331.

The *Sabbrese* Court then noted that the Third Circuit has instructed "that '[w]here the particular remedial section in the statute provides for only equitable remedies then no right to a jury trial exists.'" *Id.* at 332 (alteration in original) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)). Accordingly, the Court held that "since compensatory and punitive damages [were] not available, the sole remedy for plaintiff's retaliation claims pursuant to the ADA [was] equitable relief," and, as a result, "plaintiff [was] not entitled to a jury trial on that claim." *Id.*

---

need not consider this document to resolve the present motion because Plaintiff has not pleaded that Defendant, by itself, has fifty or more employees.

In response, Plaintiff contends that many courts outside of the Third Circuit have held that compensatory damages are recoverable on an ADA retaliation claim, and, consequently, Plaintiff should be entitled to seek compensatory damages and demand a jury trial on that claim. Nevertheless, District Courts in this circuit have consistently followed *Sabbrese's* holding. *See Engle v. Physician Landing Zone*, 2017 WL 5952941, at *2 (W.D. Pa. 2017); *McFadden v. Biomedical Sys. Corp.*, 2014 WL 80717, at *6 (E.D. Pa. 2014); *Weaver v. Cty. of McKean*, 2012 WL 1564661, at *7 (W.D. Pa. 2012); *Kozempel v. Grand View Hosp.*, 2011 WL 1196851, at *3 (E.D. Pa. 2011); *Baker v. PPL Corp.*, 2010 WL 419417, at *1, *4-*8 (M.D. Pa. 2010) (adopting Report and Recommendation); *Shellenberger v. Summit Bancorp., Inc.*, 2006 WL 1531792, at *4-*5 (E.D. Pa. 2006); *Santana v. Lehigh Valley Hosp. & Health Network*, 2005 WL 1941654, at *2 (E.D. Pa. 2005); *see also Wilkie v. Luzerne Cty.*, 2014 WL 4977418, at *2-**4 (M.D. Pa. 2014). Without guidance from the Third Circuit or the Supreme Court on this issue, this Court will not depart from the long line of District Court cases within this circuit that have consistently held that, with respect to a retaliation claim brought pursuant to the ADA, a plaintiff cannot recover compensatory damages and is not entitled to a jury trial.

Notwithstanding, Plaintiff argues that the above cases all apply a strict statutory construction and reach absurd results. This Court, Plaintiff argues, should interpret the ADA more broadly. In response to this argument, the Court simply notes its agreement with the apt observation of Judge Lungstrum in *Sink v. Wal-Mart Stores, Inc*:

> While the court can discern no logic in a rule that precludes an award of compensatory and punitive damages in an ADA retaliation case when such damages are available in Title VII retaliation cases, the court is nonetheless confined to the construction of the statute. And while the court cannot say whether Congress intended such a rule or whether the rule is simply the result of an oversight by Congress, it is an issue that Congress should address.

147 F. Supp. 2d 1085, 1101 (D. Kan. 2001).

Accordingly, the Court will dismiss Plaintiff's claim for compensatory damages with respect to his ADA retaliation claim. The Court will also dismiss Plaintiff's demand for have his ADA retaliation claim tried by a jury.

## V. CONCLUSION

For the reasons outlined above, this Court will grant Defendant's Motion, dismiss Plaintiff's claim for compensatory damages and demand for a jury trial with respect to his ADA retaliation claim (Count II), and dismiss Plaintiff's claims brought under the FMLA (Counts V and VI). The dismissal of Counts V and VI, however, will be without prejudice to Plaintiff's right to amend his complaint as it pertains to those claims. If Plaintiff chooses to amend his complaint, he is on notice that his amendment must contain specific factual allegations that establish how, under the *Enterprise* test and the FMLA regulations, the City of Pittston and Defendant are joint employers *with respect to Plaintiff's employment.* A separate Order follows.

Robert D. Mariani
United States District Judge